## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

-----------------------------------------------------------X

HAWTHORNE INDUSTRIAL
PRODUCTS INC.,
GENESIS PRODUCTS INC.,
GREAT LAKES LAMINATION,
GREAT LAKES FOREST PRODUCTS,
and FUSION WOOD PRODUCTS,

                  Plaintiffs,

                                            Civil Action No._____

     v.

PICC PROPERTY AND CASUALTY
COMPANY LIMITED d/b/a
PICC PROPERTY AND CASUALTY
COMPANY LIMITED QINGDAO BRANCH,

                  Defendant.

-----------------------------------------------------------X

## COMPLAINT

Plaintiffs Hawthorne Industrial Products Inc. ("Hawthorne"), Genesis Products Inc. ("Genesis"), Great Lakes Lamination Inc. ("GLL"), Great Lakes Forest Products Inc. ("GLFP"), and Fusion Wood Products, LLC ("Fusion" and, together with the other plaintiffs, the "Plaintiffs"), by and through their undersigned attorneys, respectfully submit this Complaint against defendant PICC Property and Casualty Company Limited ("PICC" or the "Defendant"), and allege upon information and belief as follows:

## THE PARTIES

1.      Plaintiff Hawthorne is a corporation organized and existing under the laws of Florida, with an office and principal place of business 9674 Kilgore Rd, Orlando, Florida 32836, and at all material times has been acting as agent for Genesis, GLL, GLFP, and Fusion pursuant

6382711v1

to written authority granted by each of the foregoing for the purpose of protecting and prosecuting their claims for cargo losses, damages, and related expenses.

2.      Plaintiff Genesis is a company formed and organized under the laws of the state of Indiana with a principal place of business located at 2608 Almac Ct., Elkhart, Indiana, and at all material times has been an insured under certain of the marine cargo insurance policies described below.

3.      Plaintiff GLL is a company formed and organized under the laws of the state of Indiana with a principal place of business located at 21861 Protecta Dr., Elkhart, Indiana, and at all material times has been an insured under certain of the marine cargo insurance policies described below.

4.      Plaintiff GLFP is a company formed and organized under the laws of the state of Indiana with a principal place of business located at 16776 Woodland Hills Dr. Granger, Indiana, and at all material times has been an insured under certain of the marine cargo insurance policies described below.

5.      Plaintiff Fusion is a company formed and organized under the laws of the state of Indiana with a principal place of business located at 1600 W. Mishawaka Rd., Elkhart, Indiana, and at all material times has been an insured under certain of the marine cargo insurance policies described below.

6.      Defendant PICC is a company formed and organized under the laws of the People's Republic of China, with a branch office in Qingdao, and at all material times was the insurer under the marine cargo insurance policies described below.

## JURISDICTION AND VENUE

7.      This dispute concerns marine cargo insurance policies for cargo carried on board an ocean-going vessel and, therefore, it is within the Court's admiralty and maritime subject

matter jurisdiction 28 U.S.C. § 1333, and it is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

8.      This Complaint also seeks relief pursuant to marine cargo insurance policies issued by PICC, for which PICC has disputed and has not paid some claims, and therefore a justiciable controversy exists between the parties, and the Court may issue a declaratory judgment pursuant to 28 U.S.C. § 2201.

9.      PICC is subject to the Court's personal jurisdiction because it regularly conducts business within the District and the United States including, but not limited to: (1) issuing marine cargo insurance policies to insureds throughout the United States; (2) issuing the marine cargo insurance policies at issue here to Genesis, GLL, LFP, and Fusion, all of which exist under the laws of the State of Indiana, one of the states comprising the United States; (3) issuing marine cargo insurance policies covering cargo to be delivered within the United States; (4) issuing the marine cargo insurance policies at issue here covering cargo to be delivered in Baltimore, Maryland; (5) issuing marine cargo insurance policies pursuant to which claims are paid in United States dollars; (6) issuing the marine cargo insurance policies at issue here pursuant to which claims are to be paid in United States dollars at Baltimore, Maryland; (7) issuing marine cargo insurance policies designating claims agents throughout the United States; (8) issuing the marine cargo insurance policies at issue here designating Transatlantic Marine Claims Agency of Baltimore, Maryland, as claims agent; and (9) appointing a marine cargo surveyor—Sedgwick of 120 Broadway, Suite 900, New York, 10271—to, among other things, inspect the cargo in Albany, New York, Coeymans, New York, and Baltimore, Maryland, and to adjust and deny the marine insurance claims at issue here.

10.     Venue is proper in the District because: (1) the marine cargo insurance policies at issue here covered cargo to be delivered in Baltimore, Maryland; (2) the marine cargo insurance policies at issue here provided that claims are to be paid at Baltimore, Maryland; (3) the marine insurance policies at issue here designated Transatlantic Marine Claims Agency of Baltimore, Maryland, as claims agent; (4) the sound and/or salvageable portion of the cargo at issue here was in fact discharged in Baltimore, Maryland; and (5) PICC appointed a marine cargo surveyor who inspected the cargo in Baltimore, Maryland.

### STATEMENT OF FACTS

11.     On or about November 25, 2021, in consideration for the payment of premiums, PICC issued a series of marine cargo insurance policies covering "ALL RISKS" of transporting certain goods from Qingdao, China to Baltimore, Maryland on the vessel TAC IMOLA:

| | Insurance Policy No. | Invoice No. | B/L No. | Package & Quantity | Goods | Amount Insured |
|---|---|---|---|---|---|---|
| Genesis Products Inc. | PYIE2021 370200000 50145 | 21NT-HSLM01 GP | HSLM01QI NBAL001 | 920 CRTS | MDF Panels | USD 2,545,638.69 |
| Genesis Products Inc. | PYIE2021 370200000 50147 | 21NT-HSLM02 GP | HSLM01QI NBAL002 | 1260 CRTS | Pinus Sylvestris Plywood | USD 3,426,865.61 |
| Genesis Products Inc. | PYIE2021 370200000 50148 | 21NT-HSLM03 GP | HSLM01QI NBAL003 | 3559 CRTS | Pinus Sylvestris Plywood | USD 16,768,444.80 |
| Great Lakes Lamination | PYIE2021 370200000 50146 | 21NT-HSLM04 GLL | HSLM01QI NBAL004 | 400 CRTS | MDF Panels | USD 1,102,760.51 |
| Great Lakes Forest Products | PYIE2021 370200000 50149 | 21NT-HSLM05 GLFP | HSLM01QI NBAL005 | 1640 CRTS | Pinus Sylvestris Plywood | USD 4,367,362.56 |
| Great Lakes Lamination | PYIE2021 370200000 50150 | 21NT-HSLM06 GLL | HSLM01QI NBAL006 | 1044 CRTS | Pinus Sylvestris Plywood | USD 5,044,805.11 |
| Fusion Wood Products | PYIE2021 370200000 50151 | 21NT-HSLM07 FWP | HSLM01QI NBAL007 | 676 CRTS | Pinus Sylvestris Plywood | USD 3,344,286.04 |

-4-

|  | Insurance Policy No. | Invoice No. | B/L No. | Package & Quantity | Goods | Amount Insured |
|---|---|---|---|---|---|---|
| Genesis Products Inc. | PYIE2021 370200000 50153 | 21NT-HSLM167 GP | HSLM01QI NBAL167 | 140 CRTS | Pinus Sylvestris Plywood | USD 662,293.63 |

True and correct copies of the marine cargo insurance policies are attached hereto as Exhibit A.

12.     Each of the marine cargo insurance policies was subject to PICC's Ocean Marine Cargo Clauses.  A true and correct copy of the Ocean Marine Cargo Clauses are attached as Exhibit B.

13.     Clause I.1(1) of the Ocean Marine Cargo Clauses provides that the insured shall abandon to the insurer any cargoes that are a constructive total loss.

14.     Clause I.1(2) of the Ocean Marine Cargo Clauses provides that the policies cover total or partial loss caused by accidents including "fire."

15.     Clause I.1(5) of the Ocean Marine Cargo Clauses provides that the policies cover the insured's reasonable costs of salvaging the cargoes or minimizing the loss of the cargoes.

16.     Clause I.1(6) of the Ocean Marine Cargo Clauses provides that the policies cover "[l]osses attributable to discharge of the insured goods at a port of distress …."

17.     Clause I.3 of the Ocean Marine Cargo Clauses provides that the policies cover "all risks of loss of or damage to the insured goods whether partial or total, arising from external causes during the course of transit."

18.     Clause IV.2 of the Ocean Marine Cargo Clauses provides that "[t]he Insured shall … take reasonable measures immediately in salvaging the goods or preventing to minimizing a loss or damage thereto" and that "[t]he measures taken by the Insured … shall not be considered … as a waiver of abandonment hereunder, or as acceptance thereof."

19.     Clause V of the Ocean Marine Cargo Clauses provides that the insurer shall "without delay" determine if the marine cargo insurance policy covers the loss or, if the circumstances of the claim are "complicated", within thirty days after receiving the claim agree on a reasonable claims handling period.

20.     When the cargo was loaded on the vessel in Qingdao, China on November 24-25, 2021, the vessel's owner and/or charterers issued bills of lading that state that it was in "good order and condition."  True and correct copies of all such bills of lading are attached as Exhibit C.

21.     The cargo was expected to arrive in Baltimore, Maryland on or about January 8, 2022.

22.     However, during the voyage, the vessel experienced two separate fires in its cargo holds and some of the insured cargo was destroyed and/or damaged.

23.     On December 3, 2021, while sailing to Baltimore, Maryland, the vessel experienced a fire in cargo hold number 4, destroying and/or damaging cargo in that hold.

24.     Subsequently, on December 30, 2021, while seeking a port of refuge in Korea, the vessel experienced a second fire in cargo hold number 2, destroying and/or damaging cargo in that hold, too.

25.     During these fires, deviations, and delays, the cargo became so badly damaged, moved, shifted, collapsed, crushed, charred, heated, wetted, warped, decayed, and decomposed that Canton Port Services ("Canton"), the stevedores at the discharge port of Baltimore, Maryland, refused to unload it due to health and safety concerns.

26.     As a result of Canton's refusal to discharge the fire-damaged cargo, the vessel deviated to Albany, New York, where between March 5, 2022 and April 26, 2022, some of the fire-damaged cargo was discharged by the Federal Marine Terminal ("FMT").

27.     There, the cargo was inspected by PICC's marine cargo surveyor, and some of it was deemed a total loss and disposed.

28.     But, before all of the destroyed and/or damage cargo was discharged in Albany, New York, a dispute arose between FMT and the vessel's owner and charterers—who were contractually and legally obligated to pay to discharge the cargo—and the vessel shifted to an anchorage off Long Island, New York.

29.     As a consequence of ongoing disputes between FMT and the vessel's owner and charterers, Hawthorne, on behalf of Genesis, GLL, GLFP, and Fusion, was involuntarily compelled to pay FMT $174,937.64 for the discharge and disposal of some of the cargo.

30.     Shortly thereafter, Hawthorne, on behalf of Genesis, GLL, GLFP, and Fusion, submitted a claim to PICC for reimbursement of discharge and disposal costs, but PICC—by and through its local agent at Sedgwick in New York—denied the claim in an email dated May 17, 2022: "[T]he Policy in affect for these shipments would not cover the disposal costs of damaged cargo."  A true and correct copy of the denial is attached hereto as Exhibit D.

31.     And, as to the remainder of the cargo discharged at FMT but not disposed, on June 26, 2022, PICC rejected abandonment on grounds that a portion of it was salvageable, and that cargo is still subject to an ongoing dispute concerning whether it is salvageable or a constructive total loss.  A true and correct copy of the rejection is attached hereto as Exhibit E.

32.     Subsequently, FMT presented another demand for payment in the amount of $450,000.00 for additional discharge and disposal costs at Albany, New York, but Hawthorne,

on behalf of Genesis, GLL, GLFP, and Fusion, responded that it has abandoned the cargo to

PICC and has therefore rejected the claim.  FMT's claims have not yet been resolved.

33.     Since Canton continued to refuse to unload destroyed and/or damaged cargo

remaining on board the vessel due to health and safety concerns, FMT had not discharged and

disposed of all of the destroyed and/or damaged cargo on the vessel at Albany, New York, and

the vessel's owner and charterer continued to refuse to comply with their contractual and legal

obligations to discharge the cargo, Hawthorne, on behalf of Genesis, GLL, GLFP, and Fusion,

was involuntarily compelled to pay $661,650.16 to P&M Brick, LLC ("P&M Brick") in

Coeymans, New York to discharge and dispose of the rest of the destroyed and/or damaged

cargo remaining onboard the vessel.

34.     The Vessel discharged and disposed of some more, but still not all, of the

remaining cargo at P&M Brick in Coeymans, New York between May 20, 2022 and May 26,

2022.

35.     There, after inspection by PICC's local marine cargo surveyor, almost all of the

destroyed and/or damaged cargo was found to be a total loss and was disposed.

36.     The vessel then continued to Baltimore, Maryland where, on or about June 1,

2022, the remainder of the cargo was discharged, taken to warehouses, subjected to special joint

surveys, and recoopered, salvaged, or disposed as appropriate.

37.     As described above, Plaintiffs have been working with PICC throughout this

process.

38.     On or about June 21, 2022, Hawthorne, on behalf of Genesis, GLL, GLFP, and

Fusion, submitted their first partial claim, supported by documents and spreadsheets, to PICC in

the amount of $8,322,731.35, representing a request for payment on account for the cargo

destroyed by fire in cargo hold number 2 plus reimbursement of payments made to P&M Brick

for discharge and disposal at Coeymans, New York.  A true and correct copy of the first partial

claim is attached hereto as Exhibit F.

39.     On March 16, 2023, PICC paid $7,746,340.59 on account for the cargo in hold

number 2 that was destroyed by fire, but it rejected the request for reimbursement of discharge

and disposal at P&M Brick in Coeymans, New York, even though its own surveyor deemed that

cargo to be a total loss.

40.     Next, on or about August 4, 2023, Hawthorne, on behalf of Genesis, GLL, GLFP,

and Fusion, submitted another partial claim, again supported by documents and spreadsheets, in

the amount of $12,180,648.03, representing the balance of their insurance claims of

$9,619,809.82 for cargo in holds other than number 2 plus other discharge, disposal, special

survey, warehouse, and sue and labor fees, costs, and expenses in the amount of $2,560,838.21.

A true and correct copy of the second partial claim is attached hereto as Exhibit G.

41.     However, despite repeated inquiries, PICC still has not yet issued a final

determination of coverage and still has not yet committed to a schedule for resolving the

insurance claim.

42.     On the other hand, Plaintiffs have complied with all conditions precedent to

coverage.  For example, Hawthorne, on behalf of Genesis, GLL, GLFP, and Fusion, has

commenced legal actions in United States District Courts in Maryland, Louisiana, and Texas as

well as arbitration in Hong Kong to protect its cargo claims against the vessel and its owner,

managers and charters, and has obtained security in the form of a $28 million letter of

undertaking from the vessel's owner as well as about $450,000 in cash from one of the vessel's

charterers.

43.     In protecting cargo recovery claims by pursuing these legal actions, and dealing with the damaged and destroyed cargo, Hawthorne on behalf of Genesis, GLL, GLFP, and Fusion has incurred at least at least $3,223,335.84 in fees, costs, and interest, which continues to accrue.

### FIRST CAUSE OF ACTION: BREACH OF CONTRACT
### (ALL PLAINTIFFS)

44.     Plaintiffs repeat, reiterate, and reallege each and every allegation set forth in paragraphs 1-43 above with the same force and effect as if set forth at length below.

45.     PICC breached the contracts of insurance when PICC did not within thirty days of receipt of the claim make a final determination as to coverage or commit to a schedule for resolving the claim.

46.     PICC breached the contracts of insurance when PICC refused to reimburse and/or pay for cargo loss and/or damage as well as certain sue and labor charges that were necessary to mitigate losses and damages arising under the marine cargo policies; for example: (1) its refusal to reimburse for discharge costs in Albany, New York; (2) its rejection of the abandonment of cargo remaining at Albany, New York, which is a constructive total loss; (3) its refusal to reimburse for discharge and disposal costs in Coeymans, New York, even though it agreed that cargo was a total loss; (4) its refusal to reimburse and pay for discharging, warehousing, and surveying fees and costs incurred in Baltimore, Maryland; and (5) its refusal to reimburse and pay for fees and costs of protecting and securing the cargo claims through legal actions.

47.     As a consequence of PICC's breaches of the contracts of insurance, Plaintiffs have suffered at least $12,843,145.66 in losses, damages, fees, costs, and interest, which continue to accrue.

WHEREFORE, Plaintiffs demand judgement against the Defendant in the amount of at least $12,843,145.66 together with fees, costs, and interest thereon.

## SECOND CAUSE OF ACTION: DECLARATORY RELIEF
### (ALL PLAINTIFFS)

48.     Plaintiffs repeat, reiterate, and reallege each and every allegation set forth in paragraphs 1-44 above with the same force and effect as if set forth at length below.

49.     The facts present an actual case or controversy and a declaration will clarify rights and obligations and afford relief from uncertainty.

50.     As a direct result of the fires, Plaintiffs have incurred and will continue to incur: (1) direct damage and losses to the cargo covered under the marine cargo insurance policies; (2) sue and labor charges for reconditioning of salvageable cargo; (3) losses on the resale of the salvageable cargo; and (4) losses due to the wrongful rejection of abandonment as mandated under the policies.

51.     Additionally, as a result of PICC's failure to comply with its obligations under the marine cargo insurance policies to respond to claims within thirty days of their submission or alternatively to agree with Plaintiffs on a response date, PICC has waived all of its policy defenses.

WHEREFORE, Plaintiffs demand a declaration that PICC is liable to Plaintiffs.

## THIRD CAUSE OF ACTION: UNJUST ENRICHMENT
### (HAWTHORNE)

52.     Plaintiff Hawthorne repeats, reiterates, and realleges each and every allegation set forth in paragraphs 1-44 above with the same force and effect as if set forth at length below.

53.     Plaintiff Hawthorne has been advancing payments as authorized agent on behalf of Genesis, GLL, GLFP, and Fusion for sue and labor charges described above that should instead be for PICC's account under the marine cargo insurance policies.

54.     PICC has accepted the benefit of these payments, and it would be inequitable for PICC to avoid payment to Plaintiff Hawthorne.

55.     As a consequence of PICC's unjust enrichment, Plaintiff Hawthorne has suffered at least $3,223,335.84 in losses, damages, fees, costs, and interest, which continue to accrue.

WHEREFORE, Plaintiff Hawthorne demands judgement against the Defendant in the amount of at least $3,223,335.84 together with fees, costs, and interest thereon.

### FOURTH CAUSE OF ACTION: BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING (ALL PLAINTIFFS)

56.     Plaintiffs repeat, reiterate, and reallege each and every allegation set forth in paragraphs 1-44 above with the same force and effect as if set forth at length below.

57.     The law prohibits unfair methods of competition and unfair or deceptive acts or practices in the business of insurance.

58.     By selling the marine cargo insurance policies to Plaintiffs and by accepting the payment of premiums, PICC assumed a duty of good faith and fair dealing towards Plaintiffs.

59.     The marine cargo insurance policies therefore contain an implied covenant that PICC would deal fairly and in good faith with Plaintiffs, and that PICC would do nothing to injure, frustrate, or interfere with Plaintiffs' rights to receive the benefits of the marine cargo insurance policies.

60.     PICC failed to meet the minimum standards of the duty of good faith and fair

dealing by their unreasonable failure to honor their insurance coverage obligations under the

marine cargo insurance policies.

61.     The position that PICC has taken to deny part of Plaintiffs' claims for the costs of

discharging, abandoning, and disposing of the destroyed and/or damaged cargo is not reasonable

and is in bad faith in view of custom and practice in the maritime industry and exiting general

maritime law.

62.     As a consequence of PICC's bad faith, Plaintiffs have suffered at least

$12,843,145.66 in losses, damages, fees, costs, and interest, which continue to accrue.

WHEREFORE, Plaintiffs demand judgement against the Defendant in the amount of at

least $12,843,145.66 together with fees, costs, and interest thereon.

### FIFTH CAUSE OF ACTION: DECLARATORY RELIEF AND WAIVER OF ALL POLICY DEFENSES (ALL PLAINTIFFS)

63.     Plaintiffs repeat, reiterate, and reallege each and every allegation set forth in

paragraphs 1-44 above with the same force and effect as if set forth at length below.

64.     The facts present an actual case or controversy, and a declaration will clarify

rights and obligations and afford relief from uncertainty.

65.     As a result of PICC's failure to comply with its contractual duty under the

policies' "claims handling" clause, cited at paragraph 19 above, requiring PICC's response to a

claim within 30 days of its submission, or alternatively to agree with the insured Plaintiffs on a

response date, PICC has waived its policy defenses.

WHEREFORE, Plaintiffs demand a declaration that PICC waived all of its policy

defenses.

WHEREFORE, Plaintiffs demand judgement against the Defendant in the amount of at

least $12,843,145.66 together with fees, costs, and interest thereon, a declaration that the

damages and losses claimed herein are covered by the marine cargo insurance policies, and for

such other and further relief as may be just and proper.

Dated:  November 29, 2023
Baltimore, Maryland

> /s/ Imran O. Shaukat
> James W. Bartlett, III (Federal Bar No. 00017)
> Imran O. Shaukat (Federal Bar No. 30134)
> Semmes, Bowen & Semmes
> 250 West Pratt Street, Suite 1900
> Baltimore, MD 21201
> jbartlett@semmes.com
> Tel. 410-539-5040
> Fax 410-539-5223
>
> and
>
> Alfred J. Kuffler
> MONTGOMERY MCCRACKEN
>   WALKER & RHOADS LLP
> 1735 Market Street
> Philadelphia, Pennsylvania 19103
> Tel.        (215) 772-7454
> Email:     akuffler@mmwr.com
>
> and
>
> Robert E. O'Connor
> Wook Chung
> MONTGOMERY MCCRACKEN
>   WALKER & RHOADS LLP
> 437 Madison Avenue
> New York, New York 10022
> Tel.:       (212) 867-9500
> Email:     wchung@mmwr.com
>                 roconnor@mmwr.com
>
> *Counsel for Plaintiffs Hawthorne Industrial*
> *Products Inc., Genesis Products Inc., Great*

-15-

*Lakes Lamination, Great Lakes Forest*
*Products, and Fusion Wood Products*

3234257.docx