Exhibit E

| | |
|---|---|
| **From:** | 深蓝 <41583973@qq.com> |
| **Sent:** | Sunday, June 26, 2022 11:57 PM |
| **To:** | Chung, Wook |
| **Cc:** | DeOrchis, Vincent M.; Kuffler, Alfred; O'Connor, Robert E.; 胡晶; |
| | russell@newtraditionsltd.com; petervaz@aol.com; songyingxiang; IvanShen; |
| | Lutfur.Rahman@sedgwick.com; ishaukat@semmes.com; jbartlett@semmes.com; |
| | sibyl@newtraditionsltd.com |
| **Subject:** | 回复：RE: 回复：INSURANCE CLAIM: RE: M/V Tac Imola - Demand for Payment of Cargo Damages -$8,322,731.35 |

**\*\*CAUTION\*\* External Email**

Dear Mr Chung,

Thank you for your email below. I've verified cargo value in cargo hold 2.

Sorry that I have not responded to your long emails frequently sent to me one by one. I handle claims and receive phone calls from all over the world every day, and my mailbox is flooded with tons of emails, which makes me quite busy. But we never omit the subject claim. This captioned case is complicated with huge loss, and we have been closely monitoring the discharging progress, so that we may have final report with adjusted loss/damage and the ascertained cause of loss in due course. According to our normal claim procedure, Claimant should send us a claim letter detailing all their loss/damage under each insurance policy and we verify insurance liability and compensate at one go. Till this date, the subject insured are still in the process of discharging, with cargo holds # 1,3,4 and 5.

**Cargo owner's request of payment in Cargo hold 2**

Our surveyor, Capt.Rahman, sent us an interim report on 22 June,and he is expected to send us final report, hopefully in the coming days, subject to progress of discharging.

But now the situation is,  Hawthorne Industrial Products, Inc. on behalf of the owners of the subject cargo formally requested us to pay in advance the loss/damage in cargo 2, which was already discharged at port Albany and Coeymans, totaled 2358 crates, as per your email dated 21 June.

Capt. Rahman ascertains in his interim report, as is in his email to you dated 25 June, that 1731 crates at port Coeymans are considered total loss, except 38 crates salvageable. For the 627 crates discharged in port Albany, there are about 20% of the crates salvageable, but due to consignee's inaction in mitigating and salvaging the loss, there are no salvage value after two months exposing to elements, despite Capt.Rahman's urgent reminders many times.

I must say, our surveyor Capt.Rahman is very responsible and diligent in appealing to protecting the better cargo discharged in Albany, he even assisted in finding a salvage contractor, who helped to protect the cargo with tarp at his own expenses. On behalf of our insurers, he has tried his best to arouse cargo owner's attentions to mitigate the loss. If the Insured had spent such efforts and cost to protect the cargo from exposing to elements, it would have become a good example of Section I (5) of the Policy: reasonable cost incurred by the Insured in salvaging the goods or averting or minimizing a loss recoverable under the Policy. But the fact is, to our disappointment, the Insured is not sincere in protecting the better cargo or salvaging them, which breaches our Section IV of the Policy that requires the Insured to immediately take all reasonable measures to salvage the cargo or prevent and minimize the claimed loss. PICC is not liable for increased damages as a result of the Insured's failure to fulfill this obligation.

1

I have verified the cargo value of cargo hold 2 under each insurance policy and submit request of payment (except salvageable crates in Coeymans and originally salvageable crates in Albany) to my supervisor, subject to our head office's approval.

## Our response to the Notice of Abandonment

We PICC acknowledges receipt of your June 3, 2022, email in which Hawthorne Industrial Products, Inc. on behalf of the owners of the plywood cargo, provided a Notice of Abandonment of approximately "1,291 bundles containing approximately 2500 crates of cargo" on the basis that the cargo has no net salvage value.

We understand that the cargo being abandoned is cargo that had been discharged on or before April 6, 2022, from the Vessel in Albany, New York. However, not all of the cargo that was discharged in Albany was unsalvageable, as already stated above.  Since April 6, 2022, it appears that no efforts to salvage any of the usable creates was made and the cargo has remained outdoors and exposed to the elements.  Section IV of the Policy requires the Insured to immediately take all reasonable measures to salvage the cargo or prevent and minimize the claimed loss. PICC is not liable for increased damages as a result of the Insured's failure to fulfill this obligation.

Accordingly, please be advised that PICC does not accept the Notice of Abandonment and recommends that Hawthorne act as a prudent uninsured to minimize the claimed loss.

## On disposal cost

On your 21 June, email in which Hawthorne Industrial Products, Inc. on behalf of the owners of the plywood cargo, claims operation charge and disposal ($576,390.76).

We reject this part of claim, and reiterate that disposal cost is not covered by our policy. Seems you confused it with mitigation cost. I've already given an example of what may be reimbursed as reasonable cost in salvaging the goods, or averting or minimizing a loss.

Disposal cost is incurred when damaged cargoes have no use as debris and it costs to clear them away, which has nothing to do with salvaging the damaged goods. They are different concepts. I know you argue that the port authority may request debris cleared away in exchange for cargo discharge at their port. But that's still disposal cost, either paid by carrier or cargo owner depending on their contract or carriage and booking note. It's an issue under contract of carriage, instead of an issue under insurance contract.

## Claim procedure and pending docs

In reply to your following queries

 **1) when PICC expects to finalize its review and process this claim (ie. $8,322,731.35)**

our answer :we have submitted the initial payment request to our head office, subject to their approval. We don't cover disposal cost. Meanwhile please call 0532-95518(customer service center) to register damage on each policy for us to start claim payment process.

 **and 2) if PICC has any reports, documents, or any information on the subject matter to allow us to protect the interests of the cargo owners against the vessel – including a) who was the "carrier" that issued the bills of lading,**

Our answer: I think this is a question we should address to cargo owner. As per the bill of lading sent to us by Sibyl, Zhenhua international shipping agency on behalf of master Li Song issued the BL. Besides, we only sight a booking note, which was also sent by Sibyl. We note you on behalf of cargo owner has sued the shipowner, have you got any progress or ascertain if the ship was bareboat during this captioned voyage?There is many parties involved, ie Hanwin, Transatlantica and we reply on cargo owner to advise us who is the carrier, for according to Hague rules, shipper should present a written notice to carrier when damage was found.

**(b) whether Transatlantica or Hanwin, or someone else, was responsible for loading, stowing and securing the subject cargo at Qingdao on MV Tac Imola,**

our answer: This is also a question we need to further clarify. As we have no contact with shipper, we only check the booking note and it says L/S/D always as per masters satisfaction. But it doesn't say who was responsible for loading, stowing and securing the subject cargo actually.

In a statement of fact issued by master of Tac Imola, forwarded to us by Sibyl, master said cargo were loaded, lashed and tallyed by shore company. But by what company and who contracted this shore company ? Ivan told us by phone that the cargoes were handed over to Qingdao Qianwan West Port United Terminal at loading port,  he also told us over phone that shiper contracted full liner terms with carrier, but there is no written documents to prove who instructed shore company to do lashing/securing/dunnage. We need their further cooperation in this regards to clarify this matter.

Thus please provide sales contract between buyer and seller (there is no term of sale on PO or on commercial invoice), sea freight payment invoice, cargo pre-loading inspection report /photos or P & I pre-loading survey report, as well as written notice sent to carrier when damage was found (according to contract of carriage), doc where it shows full liner terms.

**and c) what theories or conclusions has PICC developed regarding the causation of the two fires aboard the ship during the voyage.  And 3) we ask PICC to acknowledge and provide an update on what, if anything, is being done with respect to the abandoned cargo at Port of Albany.**

our answer: according to our fire expert, fire was caused by abrasion and shifting of cargo due to bad stowage and lashing, but it has not issued a final report, which will ascertain whether fire originated from antbox or plywood/MDF. We note cargo owner has also retained a fire expert. Please send us their findings. We do NOT accept the abandoned cargo at port of Albany.

Let me know if you have any further queries.

Best regards,

刘洋 Angie Liu ｜ Claim handler
Non-Motor Claims, PICC P&C Qingdao Branch
Rm211, 264  East Xianggang Rd, Qingdao 266061
Tel: +86 532 85719335

------------------ 原始邮件 ------------------
发件人: "Chung, Wook" <WChung@mmwr.com>;
发送时间: 2022 年 6 月 25 日(星期六) 凌晨 0:01
收件人: "深蓝" <41583973@qq.com>;"胡晶
"<hujing30@qingd.picc.com.cn>;"songyingxiang"<songyingxiang@qingd.picc.com.cn>;"Lutfur.Rahman@sedgwick.com"<Lutfur.Rahman@sedgwick.com>;
抄送: "DeOrchis, Vincent M."<VDeOrchis@mmwr.com>;"Kuffler, Alfred"<akuffler@mmwr.com>;"O'Connor, Robert
E."<roconnor@mmwr.com>;"russell@newtraditionsltd.com"<russell@newtraditionsltd.com>;"petervaz@aol.com"<petervaz@aol.com>;"IvanShen
"<ivan@newtraditionsltd.com>;"ishaukat@semmes.com"<ishaukat@semmes.com>;"jbartlett@semmes.com"<jbartlett@semmes.com>;"sibyl@newtraditionsltd.com"<sibyl@newtraditionsltd.com>;
主题: RE: 回复：INSURANCE CLAIM: RE: M/V Tac Imola - Demand for Payment of Cargo Damages -$8,322,731.35

Dear Ms. Liu,

We thank you your response to our email.

However, we remain quite concerned about your understanding of the situation.  Even though Mr. Ivan and Ms. Sibyl have been diligently providing you information and documents relevant to the damage to our clients' cargos that you/PICC asked for, we do not believe PICC has ever been in 'close touch' with Hawthorne – Mr. Ivan and Sibyl advised us that they too have been waiting to hear from PICC with substantive guidance and resolutions about the losses and damages involving the insured cargo.

As said before, we are very surprised and troubled by how slow the cargo claims are being processed by PICC, whom we believe to be a class A insurance company in China.  While we understand we have a lot of damaged plywood, you have had nearly two months to assess this matter.  And importantly, PICC's own surveyor, in his report to PICC on or about June 5, 2022 (almost 3 weeks ago), has declared the "total loss" of all the cargos in holds number 2 and 4.

We also have been asking PICC to acknowledge and respond to several issues involving US ports and US Customs, including but not limited to 1) the fact that Hawthorne has formally and in writing abandoned the cargo at Port of Albany to PICC under the terms of your policies, and 2) about PICC's intention to cover the costs of reconditioning the cargo discharged at Port of Baltimore.  Despite our several requests, we have yet to receive any kind of acknowledgment or guidance from PICC in terms of how we can best advise our client to handle the situation.  We have even made ourselves available to you and PICC to assist PICC, including working with PICC's counsels in the US in order to mitigate any further losses and damages.  We have not been contacted by PICC's counsel, nor has PICC provided us with any  acknowledgment or guidance on these critical  issues that should concern PICC.

Importantly, we attach a modified spreadsheet that shows our losses along with the insurance policy numbers.  We are confident that this will provide the information you seek to accelerate the payment process for the cargo losses from hold number 2.

Please note that due to PICC's lack of response and rejection to properly guide and cover the insured, we have been acting as a prudent uninsured.  We now have been instructed to take the necessary legal action to enforce the rights of the insured against PICC.  While we are ready to file a Declaratory Judgment against PICC in a US federal court, that will

take a few days to prepare.  That should give PICC the additional time to process our claim for the cargo losses, at least in respect to the cargo from hold number 2, of which your own surveyor has declared a total loss.

We hereby insist that you also advise us – 1) when PICC expects to finalize its review and process this claim (ie. $8,322,731.35), and 2) if PICC has any reports, documents, or any information on the subject matter to allow us to protect the interests of the cargo owners against the vessel – including a) who was the "carrier" that issued the bills of lading, (b) whether Transatlantica or Hanwin, or someone else, was responsible for loading, stowing and securing the subject cargo at Qingdao on MV Tac Imola, and c) what theories or conclusions has PICC developed regarding the causation of the two fires aboard the ship during the voyage.  And 3) we ask PICC to acknowledge and provide an update on what, if anything, is being done with respect to the abandoned cargo at Port of Albany.

Again, please let us know how we can assist you/PICC in order for PICC to quickly process our claims and for PICC to guide the insureds.

We write this letter without any prejudice to our clients and preserving all rights and defenses.

Thank you, Ms, Liu.

Regards,

Wook



**Wook Chung** |  Partner
**Montgomery McCracken Walker & Rhoads LLP**
437 Madison Avenue | New York, NY 10022
Tel: 212-867-9500| Dir: 212-551-7795  | Fax: 212-599-5085 | wchung@mmwr.com | Attorney Profile

Notice: This email message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution and/or copying of this message is strictly prohibited. If you have received this message in error, please immediately notify the sender and please immediately delete this message from your computer as well as any storage device(s). Thank you.

**From:** 深蓝 <41583973@qq.com>
**Sent:** Monday, June 20, 2022 10:10 PM
**To:** Chung, Wook <WChung@mmwr.com>
**Cc:** Lutfur.Rahman@sedgwick.com; DeOrchis, Vincent M. <VDeOrchis@mmwr.com>; Kuffler, Alfred <akuffler@mmwr.com>; songyingxiang <songyingxiang@qingd.picc.com.cn>; 胡晶 <hujing30@qingd.picc.com.cn>; O'Connor, Robert E. <roconnor@mmwr.com>; russell@newtraditionsltd.com; petervaz@aol.com; IvanShen <ivan@newtraditionsltd.com>; ishaukat@semmes.com; jbartlett@semmes.com
**Subject:** 回复：INSURANCE CLAIM: RE: M/V Tac Imola - Demand for Payment of Cargo Damages -$8,322,731.35

**CAUTION** External Email

Dear Mr Wook,

We acknowledge receipt of your email and will reply your concerns in details. We were not absent during this period, we've been in close touch with Sybil and Ivan, who are Russell's colleagues stayed in China and they provided us some related documents and excel forms to check.

My work now is to verify how many cargo were damaged under EACH policy and their corresponding unit price according the commercial invoices. This is a huge workload, considering the large quantities of cargo with various prices and various insureds. I know you calculate the loss based on cargo holds, but we have to calculate the loss based on insurance policy numbers.

Will revert in detail soon after check.

Best regards,

Angie Liu

深蓝

41583973@qq.com

------------------ 原始邮件 ------------------

**发件人:** "Chung, Wook" <WChung@mmwr.com>;

**发送时间:** 2022 年 6 月 21 日(星期二) 上午 9:36

**收件人:** "深蓝"<41583973@qq.com>;"胡晶"<hujing30@qingd.picc.com.cn>;"songyingxiang"<songyingxiang@qingd.picc.com.cn>;

**抄送:** "Lutfur.Rahman@sedgwick.com"<Lutfur.Rahman@sedgwick.com>;"DeOrchis,Vincent M."<VDeOrchis@mmwr.com>;"Kuffler, Alfred"<akuffler@mmwr.com>;"O'Connor, Robert E."<roconnor@mmwr.com>;"russell@newtraditionsltd.com"<russell@newtraditionsltd.com>;"petervaz@aol.com"<petervaz@aol.com>;"IvanShen"<ivan@newtraditionsltd.com>;"ishaukat@semmes.com"<ishaukat@semmes.com>;"jbartlett@semmes.com"<jbartlett@semmes.com>;

**主题:** INSURANCE CLAIM: RE: M/V Tac Imola - Demand for Payment of Cargo Damages -$8,322,731.35

**WITHOUT PREJUDICE**

To: PICC
From: Counsels for Hawthorne Industrial Products Inc.

      Re: M/V Tac Imola - Demand for Payment of Cargo Damages in Hold no.2 ($7,746,340.59) and the cost of disposal ($576,390.76).

Dear Ms. Liu,

As a follow up to my prior email to you/PICC (sent on or about 6/16/2022) in which we asked for PICC's engagement and guidance in the subject matter, we hereby submit our formal claim for payment of the damaged cargo discharged at Port of Coeymans along with the cost of the terminal operation and disposal incurred at Port of Coeymans for the same cargo.  As you know, PICC's surveyor Capt. Rahman confirms the total loss status of the said cargo discharged in Port of Coeymans (aprx.) between 5/21/2022~5/25/2022.

Please see the attached documents showing that that the total value of the cargo from the hold number 2 is $7,042,127.81.  Based on our CIF + 10% coverage ($7,746,340.59), plus the cost of operation charge and disposal ($576,390.76), **our total claim amount for the subject cargo is $8,322,731.35.**

Please find the attached supporting documents –

1. Commercial invoice + Hold 2 cargo information
2. Packing List
3. MV Tac Imola Vessel Plan

4. Port of Coeymans Invoice ("PICC Invoice")
5. Capt. Rahman survey report
6. Capt. Alok cargo survey report
7. Communications (2) to/from Port of Coeymans regarding the payment of the disposal charges.

Please let us know if PICC requires any other information or documents for the subject claim.

As you saw from Capt. Rahman's report, approximately 38 crates that have been saved from the hold number 2, and are being stored at the warehouse of Port of Coeymans (which Hawthorne had paid for as a part of the port charge).  We have connected Capt. Rahman with a potential salvager (Benedict Company LLC), a buyer that will purchase the said cargo as is and where is.  We understand that Capt. Rahman has already confirmed the purchase terms (including the purchase price), and has instructed Benedict Company to proceed with the Customs process in order for the sales to go through.  **Now that there exists no outstanding issue involving cargo discharged in Port of Coeymans, we believe our claims involving hold no. 2 should be processed immediately**.

We ask PICC to reconsider its reservation on paying Hawthorne the cost of terminal operation and the cost of disposal.  **These charges were directly related to the cargo's welfare.  And the prepayment of the said charges was an unnegotiable requirement for the Port of Coeymans before allowing the vessel to berth at its terminal.**  Again, unless the said terminal charges were paid in full and in advance, the Port of Coeymans was not going to service the vessel.  As you know, the damaged cargo had to be discharged at somewhere in order for the vessel to be allowed to call and be serviced at the Port of Baltimore, MD.  As you can see, Hawthorne has acted in good faith and paid the necessary terminal charges on behalf of the good and bad cargo, in an effort to mitigate damages.

**We also would like to remind you that we have abandoned the cargo that were discharged at Port of Albany**.  We have yet to receive PICC's response and guidance regarding those cargo despite our numerous requests for one.  We ask and expect you to take necessary steps to protect the insureds and assume/comply with the obligations as owners of the cargo including dealing with the terminal that has been trying to dispose the damaged cargo.  We note that Capt. Rahman had already addressed the condition of the cargo at the Albany port as 'total loss.'

We submit this claim without prejudice to Hawthorne and the named insureds' rights to claim against PICC under the marine cargo insurance policies. We look forward to hearing from you soon.  **After so many requests for response, if we do not hear from PICC/you soon, our client will be forced to take legal action against PICC.**

We also request that PICC to share any information or documents/records that it may have in its possession regarding the subject matter.  This will allow us to better defend the interest of the insureds and to duly prosecute the claims against the liable party(s).

We look forward to hearing from you soon.    Thank you, Mr. Liu for your time and assistance in this matter.

Kind Regards,

Wook Chung



**Wook Chung** |  Partner
**Montgomery McCracken Walker & Rhoads LLP**
437 Madison Avenue | New York, NY 10022
Tel: 212-867-9500| Dir: 212-551-7795  | Fax: 212-599-5085 |  <u>wchung@mmwr.com</u> | <u>Attorney Profile</u>

Notice: This email message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution and/or copying of this message is strictly prohibited. If you have received this message in error, please immediately notify the sender and please immediately delete this message from your computer as well as any storage device(s). Thank you.